Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| B BILLBOARD NC, LLC  Recurrente  v.  DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; OFICINA DE GERENCIA DE PERMISOS  Recurrida  OUT OF HOME MEDIA, LLC  Proponente-Recurrida | KLRA202400522 | REVISIÓN ADMINISTRATIVA procedente de la Oficina de Gerencia de Permisos  Caso núm.: 2023-511506-PCOC-040137  Sobre: Impugnación de Permisos de Construcción |
|---|---|---|

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de diciembre de 2024.

Comparece ante este tribunal apelativo, B Billboard NC, LLC (B Billboard NC o el recurrente) mediante el *Recurso de Revisión Administrativa* de epígrafe solicitándonos que revoquemos la *Resolución* emitida por la División de Revisión Administrativa adscrita a la Oficina de Gerencia de Permisos (OGPe o la recurrida) el 21 de agosto de 2024, notificada ese mismo día. Mediante dicho dictamen, la OGPe declaró *No Ha Lugar* a la Solicitud de Revisión Administrativa Núm. 2024-568943-SDR-300759 instada por el recurrente.

Por las razones que expondremos a continuación, desestimamos el recurso presentado ante la falta de jurisdicción.

**I.**

El 16 de octubre de 2023, OHM presentó ante la Oficina de Permisos del Municipio de San Juan (OPMSJ) una consulta de construcción, a la cual se le asignó el alfanumérico 2023-511506-PCOC-040137. Según el memorial explicativo, Out of Home Media, LLC (OHM o la recurrida) solicitó enmendar el permiso de construcción previamente concedido para cambiar el anuncio *mesh* a uno de pantalla digital. En esa misma fecha, la OPMSJ elevó el caso ante la consideración de la OGPe por entender que no poseía jurisdicción para conceder dicha enmienda "dado que [el] proyecto propuesto es para la instalación de Rótulos y Anuncios con proyección hacia una vía incluida en el National Highway System."[1]

El 7 de noviembre de 2023, B Billboard NC y B Billboard BG solicitaron la intervención en el caso 2023-511506-PCOC-040137.[2] Alegaron ser entidades privadas que se dedican al negocio de la publicidad en exterior y que poseen un interés propietario legítimo sobre ciertas vallas publicitarias que ubican cerca del anuncio propuesto. Además, adujeron que su interés legítimo y sustancial es que se confiera fiel cumplimiento a la Ley de Contención Lumínica.

El 26 de enero de 2024, la OPMSJ emitió una *Resolución sobre Solicitud de Intervención*, a la cual le asignó el número de caso: 2023-SIN-011327 y consignó cinco (5) determinaciones de hechos. Incluidas también las conclusiones de derecho, la OPMSJ determinó que:

> "[...] por tratarse de la evaluación de una propuesta de instalación, ubicación y exhibición de un rótulo y/o anuncio relacionado a una vía que pertenece o recibe fondos federales del *National Highway System*. Dado lo anterior, la solicitud de intervención bajo la consideración en el caso de epígrafe también debe ser elevada ante la consideración de la OGPe, [...]."[3]

---

[1] Véase, Apéndice del Recurso, a la pág. 11.
[2] *Íd.*, a las págs. 107-112.
[3] *Íd.*, a las págs. 11-15; 100-104.

Dicho dictamen fue notificado a OHM, B Billboard NC y B Billboard BG.

El 26 de marzo de 2024, la OGPe emitió el Permiso de Construccion Núm. 2023-511506-PCOC-040137 para el cambio de anuncio publicitario tipo *mesh* "existente ... adosado a fachada de estacionamiento multipisos, por pantalla digital con las mismas dimensiones."[4] La copia del mismo se notificó el 3 de abril siguiente.

El 23 abril de 2024, B Billboard NC instó una *Solicitud de Revisión Administrativa,* a la cual se le asignó el núm. 2024-568943-SDR-300759.[5] En esencia, adujo que la **"enmienda"** o permiso solicitado no cumplió con el Reglamento Conjunto 2023, ni OHM subsanó oportunamente los requerimientos remitidos por la OGPe. La vista de revisión se señaló para el 28 de mayo siguiente.[6] La misma fue recalendarizada y celebrada el 30 de mayo de 2024.

Aquilatada la prueba presentada, el 21 de agosto de 2024, se emitió el dictamen recurrido en el cual se declaró *No Ha Lugar* a la solicitud de revisión administrativa núm. 2024-568943-SDR-300759.[7] En este, se consignaron sesenta y tres (63) *Determinaciones de Hechos* cuyo contenido solo recoge el trámite procesal del caso y los acontecimientos de la vista administrativa.[8]

Ahora bien, en lo aquí pertinente, surge de las determinaciones de hechos dieciséis (16) a la veintidós (22) que las partes **argumentaron ampliamente** sobre la necesidad de resolver como cuestión de umbral la alegación de falta de legitimación. Sin embargo, la vista se celebró sin una previa determinación al respecto. Así, habiendo consignado en las conclusiones de derecho

---

[4]  *Íd.*, a las págs. 43-48; 114-119.
[5] *Íd.,* a las págs. 121-126.
[6] *Íd.*, a las págs. 127-137.
[7] *Íd.*, a la pág. 171.
[8] *Íd.*, a las págs. 151-166.

los criterios y legislación aplicable a la intervención, el Oficial Examinador resolvió en el dictamen recurrido lo siguiente:[9]

> En el caso ante nosotros, el 7 de noviembre de 2023, B Billboard NC, LLC y B Billboard BG, LLC presentaron ante la consideración de la OGPe, a través del Small Business Portal, una moción de intervención. En dicha solicitud la parte Recurrente expuso el interés propietario y personal sustancial que podría verse afectado con la aprobación del permiso de construcción consolidado en discusión.
>     **Surge de lo ventilado en la vista de revisión** y del escrito post vista de la parte Recurrente, que la OGPe **no notificó la aprobación de intervención** del caso que nos ocupa, **más sí le notificó** a la parte Recurrente la aprobación del permiso el pasado 3 de abril de 2024.
>     Analizada la *Solicitud de Desestimación por Falta de Legitimación* presentada por la parte proponente, se declara la misma no ha lugar. Concluimos que, según alegado por la parte recurrente, **de no permitirse su participación y sostenerse el permiso de construccion objeto de revisión, sería adversamente afectada como competencia en el mercado, ya que se estarían emitiendo determinaciones inconsistentes y creando normas distintas en la evaluación de permisos de rótulos y anuncios**.
>     ...

En fin, luego de evaluada la prueba presentada, se declaró *no ha lugar* a la solicitud de revisión administrativa instada por B Billboard, NC.

Inconforme con esta determinación, el 20 de septiembre de 2024, el recurrente instó el presente recurso de revisión judicial en el que señaló los siguientes errores:

> PRIMER ERROR: ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE AL CONFIRMAR EL PERMISO EXPEDIDO A LA PARTE PROPONENTE A PESAR DE QUE: [...]

> SEGUNDO ERROR: ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE COMO ENTE REVISOR AL PRESCINDIR DE INCLUIR EN SU RESOLUCIÓN FINAL DETERMINACIONES ADJUDICATIVAS EN ATENCIÓN AL RESTO DE LAS INOBSERVANCIAS DE LA SOLICITUD DE PERMISO DE CONSTRUCCIÓN, ADICIONALES AL ÚNICO ASUNTO ATENDIDO SOBRE LA ENMIENDA DE UN PERMISO ANTIGUO, YA USADO Y CADUCADO.

> TERCER ERROR: ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE AL NO EXPONER LA RAZÓN JURÍDICA POR LA CUAL IGNORAR LA LETRA DE LA SECCIÓN 2.7.4.1 DEL REGLAMENTO CONJUNTO DE 2023, LA CUAL SOLO PERMITE LA ENMIENDA DE UN PLANO-Y POR TANTO DE UN PERMISO DE CONSTRUCCIÓN- MIENTRAS SE

---

[9] *Íd.*, a las págs. 168-172. (Énfasis nuestro)

ESTÉ CONSTRUYENDO LA OBRA Y NO AÑOS LUEGO DE FINALIZADA UNA PREVIA CONSTRUCCIÓN, CON FORMATO DISTINTO DE ANUNCIO NO DIGITAL.

CUARTO ERROR: ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE AL IGNORAR LOS PLANTEAMIENTOS DE LA SOLICITUD DE REVISIÓN DE LA RECURRENTE, LA PRUEBA QUE OBRA EN EL EXPEDIENTE Y LA PRUEBA DESFILADA EN LA VISTA ADMINISTRATIVA.

Luego de varios trámites procesales ante este foro, el 16 de octubre de 2024, OHM presentó una *Moción de Desestimación* en la cual aduce que B Billboard, NC no posee legitimación activa, ya que no fue parte en el proceso administrativo. Asimismo, señaló que esta no ha demostrado ser una parte adversamente afectada ni que sufre o sufrirá un daño.[10]

El 18 de octubre de 2024, dictamos una *Resolución* concediéndole a la parte recurrida término para que expresara su posición. Luego de concedida una prórroga, el 4 de noviembre siguiente, B-Billboard, NC presentó un escrito intitulado *Réplica a Moción de Desestimación* por lo que nos damos por cumplidos.[11]

Analizados los escritos y las antedichas mociones de las partes, los autos administrativos y el expediente apelativo procedemos a resolver, como cuestión de umbral, sí contamos con jurisdicción para atender el recurso.

**II.**

**Jurisdicción**

Es norma reiterada en nuestra jurisdicción que los tribunales debemos ser celosos guardianes de nuestra jurisdicción. La falta de jurisdicción de un tribunal no es susceptible de ser subsanada. Por ello, los tribunales están obligados a considerar dicho asunto, aun

---

[10] El 8 de noviembre de 2024 OHM solicitó una prórroga para estipular la transcripción oral de la prueba y el 18 de noviembre siguiente, presentó una *Moción informativa y en cumplimiento de orden y en solicitud de término para presentar alegato en oposición.* Conforme a la decisión arribada, téngase las mociones como académicas.

[11] La parte recurrida presentó una *Moción en Reacción a Réplica a Moción de Desestimación* la cual se tiene como no puesta por ser contraria a nuestro Reglamento.

en ausencia de señalamiento alguno por las partes. Así pues, los asuntos jurisdiccionales deben resolverse con prelación a cualquier otro por ser cuestiones privilegiadas. *García v. Hormigonera Mayagüezana,*172 DPR 1, 7 (2007); *AAA v. Unión Abo. AAA,* 158 DPR 273, 279 (2002); *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 369 (2002); *Ponce Fed. Bank v. ChubbLifeIns. Co.*, 155 DPR 309, 332 (2001).

En este sentido, los tribunales deben estar alertas a su jurisdicción asegurándose en todo momento que tienen la facultad legal para entender en los recursos ante sí. Esto resulta de vital importancia en el proceso judicial pues una sentencia dictada sin jurisdicción, ya sea sobre las partes o la materia, resulta nula e ineficaz. *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007).

Cuando un tribunal acoge un recurso a sabiendas de que carece de autoridad para entender en él, actúa ilegítimamente. Por eso, cuando un tribunal no tiene jurisdicción o autoridad para considerar un recurso, procede que se desestime el mismo. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *S.L.G. Szendrey-Ramos v. F. Castillo*, supra, págs. 882-883.

**La Legitimación activa y el interés legítimo**

La revisión judicial no opera en el vacío; quien la procure debe contar con legitimación activa para ello. *Munc. Aguada y Aguadilla v. JCA*, 190 DPR 122, 136 (2014). Asimismo, sólo puede ejercerse en un asunto que presente un caso o controversia, y no en aquellas circunstancias en que se presente una disputa abstracta cuya solución no tendrá consecuencias para las partes. *E.L.A. v. Aguayo*, 89 DPR 552, 558-59 (1958), citado en *Fund. Surfrider y otros v. ARPE,* 178 DPR 563, 571-572 (2010). Una de las doctrinas de autolimitación derivadas del principio de *caso o controversia* es la legitimación activa mediante la cual se analiza **si la parte**

**compareciente es la parte adecuada para cuestionar una actuación gubernamental**. *Mun. de Aguada v. JCA*, supra, a la pág. 132; *Fund. Surfrider y otros v. ARPE*, supra, a la pág. 572.

Ahora bien, "[e]n el ámbito del derecho administrativo, cuando un litigante solicita la revisión judicial sobre la constitucionalidad de una acción o decisión administrativa a través de un pleito civil, éste tiene que demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre la acción que se ejercita y el daño alegado; y (4) la causa de acción debe surgir al amparo de la Constitución o de alguna ley. *Col. de Peritos Electricistas v. A.E.E.*, 150 DPR 327 (2000); *Hernández Torres v. Hernández Colón, et. al.*, 131 DPR 593, 599 (1992)." *Fund. Surfrider y otros v. ARPE*, supra, a la pág. 572. Además, nuestro alto foro ha indicado, en cuanto al requisito del daño que tiene que sufrir la persona natural o jurídica que acude ante el foro judicial, la lesión se puede basar en consideraciones ambientales, recreativas, espirituales o estéticas. *Íd.*, a la pág. 573.

Cónsono con lo anterior, la Sección 3.5 de la Ley núm. 38-2017, 3 LPRA Sec. 9645, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), dispone:

> Cualquier persona que tenga un interés legítimo **en un procedimiento adjudicativo** ante una agencia podrá someter una solicitud por escrito y **debidamente fundamentada** para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:
> (a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
> (b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.
> (c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención. [Énfasis nuestro]

Asimismo, "[s]i la agencia decide denegar una solicitud de intervención en un procedimiento adjudicativo notificará su determinación por escrito al peticionario, los fundamentos para la misma y el recurso de revisión disponible." Sección 3.6 de la LPAUG, 3 LPRA sec. 9646. No obstante, **el silencio de la agencia administrativa ante una solicitud de intervención no puede ser considerada como una aceptación de la misma**. Por tal razón, si la agencia decide aceptar la intervención solicitada, **esta también viene obligada a notificar la concesión de dicha solicitud**. Solo así, la otra parte en el caso estaría en posición de procurar la reconsideración correspondiente, si así lo estima pertinente. *Municipio de San Juan vs. JCA*, 152 DPR 673 (2000).

En cuanto al primer criterio de ser parte, la Sección 1.3 inciso (k) de la LPAUG, 3 LPRA sec. 9603, define "parte" como:

[t]oda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, **o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.** (Énfasis nuestro).

Por tanto, se consideran como "partes" a los efectos de la revisión judicial aquellos quienes, al haber participado e intervenido en el procedimiento administrativo, la agencia les hizo partes, a través del mecanismo de intervención consignado en la Sección 3.5

de la LPAU, 3 LPRA sec. 2155. *Fund. Surfrider y otros v. ARPe*, supra, a la pág 576.

Respecto al segundo criterio que postula, que debe establecerse que la parte esté adversamente afectada, se resolvió que se requiere que la afectación le sea adversa o desfavorable a sus intereses. *Fund. Surfrider y otros v. ARPe*, supra, a la pág. 577. La afectación se analiza a base de la noción del daño o la lesión que se ha comentado que pueden ser de tipo económico, estético o recreativo. *Íd.* En particular, nuestro Tribunal Supremo resumió el concepto de "adversamente afectado" del siguiente modo:

> [...] la frase "adversamente afectada" significa que la parte recurrente tiene un interés sustancial en la controversia **porque sufre o sufrirá una lesión o daño particular** que es causado por la acción administrativa que se impugna mediante el recurso de revisión judicial. El **daño tiene que ser claro, específico** y no puede ser abstracto, hipotético o especulativo. [Énfasis nuestro]. *Fund. Surfrider y otros v. ARPe,* supra, pág. 579.

En lo pertinente, nuestro Tribunal Supremo también ha tenido oportunidad de aclarar quiénes ostentan legitimidad activa para presentar un recurso de revisión judicial ante este tribunal. *Fund. Surfrider y otros* v. *ARPe,* supra. Para ello, ha aclarado que la legitimación necesaria para presentar un recurso de revisión **debe distinguirse de la legitimación requerida para participar en la agencia administrativa**, esto es debido a que el hecho de haber participado en el proceso administrativo **no le asegura que posea legitimación necesaria y requerida para la intervención judicial**. *Id.,* pág. 574. De forma tal, que solo pueden presentar tales recursos **quienes sean parte en el procedimiento administrativo** y demuestren, además, **estar adversamente afectados por la decisión administrativa**. *Íd.*

En consecuencia, ausentes los criterios de legitimación aquí apuntalados, no se puede ejercer el poder de la revisión judicial, pues, los tribunales venimos llamados a resolver controversias

genuinas y no cuestiones abstractas e hipotéticas que no tengan consecuencias entre las partes. *Mun. de Aguada v. JCA,* supra, a la pág. 134; *Fund. Surfrider y otros v. ARPe,* supra, a las págs. 571-572.

**La Ley para la Reforma del Proceso de Permisos de Puerto Rico y su reglamento**

Aunque toda solicitud de intervención ante la Oficina de Gerencia de Permisos (OGPe) se regirá por lo dispuesto en la LPAU, antes citada, la Ley núm. 161-2009, conocida como *la Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9011 *et seq.,* especifica que, además, se debe recurrir a los reglamentos aplicables a la agencia.

La Ley núm. 161-2009 se aprobó con el fin de establecer el marco legal y administrativo que regiría en la solicitud, evaluación, concesión y denegación de permisos de construcción que inciden en el desarrollo económico del Estado Libre Asociado de Puerto Rico. Mediante dicha ley, se creó la OGPe, las figuras del Profesional Autorizado y del Inspector Autorizado, de los Gerentes de Permisos, de los Representantes de Servicios y los Oficiales de Permisos, la Oficina del Inspector General de Permisos, la Junta Adjudicativa y la Junta Revisora.

Posteriormente, la Ley núm. 161-2009 fue enmendada por la Ley núm. 151-2013 con el propósito, entre otros, de reestructurar la OGPe y así cumplir con la meta de agilizar los procedimientos en el trámite de concesión y denegación de permisos. Además, se restituyó la aplicación de la LPAUG en la revisión de la evaluación, el otorgamiento o la denegación de determinaciones finales y permisos, recomendaciones, certificaciones, licencias, certificados o cualquier otra autorización similar otorgada por la OGPe, los Municipios Autónomos con Jerarquía de la I a la V, los Profesionales Autorizados e Inspectores Autorizados.

La Ley para la Reforma del Proceso de Permisos de Puerto Rico define en el Artículo 60, 23 LPRA sec. 9025a, la Intervención como sigue:

> Intervención.— Cualquier persona interesada en ser parte del **proceso de evaluación de determinaciones finales**, **permisos**, así como cualquier procedimiento adjudicativo requerido bajo las disposiciones de este capítulo **deberá presentar una solicitud de intervención**. El contenido, evaluación, adjudicación y revisión de determinaciones finales sobre solicitudes de intervención **se regirá por lo dispuesto en la Ley de Procedimiento Administrativo Uniforme**. Los detalles sobre el proceso de intervención deberán reflejarse **en el Reglamento Conjunto**. [Énfasis nuestro]

A tenor con los principios consagrados en el Artículo 13 de la Ley núm. 151-2013, la OGPe aprobó el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento 9473 del 16 de junio de 2023 (Reglamento Conjunto 2023) el cual define en el Tomo XII, al Interventor como:

> Aquella persona **que no sea parte original** en cualquier **procedimiento adjudicativo** que la agencia lleve a cabo y que **haya demostrado su capacidad o interés en el procedimiento**. [Énfasis nuestro]

De igual manera, en este se define "parte" de la siguiente manera:

> toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, **o que se le permita intervenir o participar en la misma**, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea **designada como parte** en dicho procedimiento. [Énfasis nuestro]

En acuerdo con lo anterior, la Sección 2.1.9.9 del Reglamento Conjunto 2023, establece:

> Cualquier persona interesada en ser parte del proceso de evaluación de **determinaciones finales**, **permisos**, así como cualquier procedimiento adjudicativo requerido bajo las disposiciones de la Ley 161-2009, podrá presentar **una solicitud de intervención debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento**. La JP, la OGPe, la Junta Adjudicativa, los Municipios Autónomos con Jerarquía de la I a la III, concederá o denegará la solicitud tomando en consideración lo dispuesto en la Ley 38- -2017 o LPAU).

a. Factores a considerarse - Se podrá conceder o denegar la solicitud, a discreción tomando en consideración los siguientes factores:

1. Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.

2. Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

3. Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

4. Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

5. Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

6. Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estarían disponibles de otro modo en el procedimiento.

7. Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

8. Se deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención.

b. Denegatoria: Toda denegatoria de una solicitud de intervención **será notificada por escrito a todas las partes ya reconocidas**, según la Regla 2.1.7, mediante una Resolución fundamentada **con determinaciones de hechos y conclusiones de derecho**, apercibiendo al peticionario del derecho que le asiste de solicitar reconsideración, revisión administrativa o acudir en Revisión Judicial al Tribunal de Apelaciones, con indicación de los términos disponibles para ello.

Aclaramos que la decisión de conceder o denegar una petición de intervención en un procedimiento administrativo es el resultado de la discreción de la agencia. *Íd.*, a la pág. 208. Sin embargo, ello conlleva una interpretación estatutaria **que no incide en la pericia administrativa**. *San Antonio Maritime v. P.R. Cement Co.*, 153 DPR 374 (2001).

**III.**

Como indicamos, aún pendiente el trámite apelativo ante esta *Curia*, OHM solicitó la desestimación del presente recurso. Adujo que, B Billboard, NC no tiene legitimación activa por lo cual, al no existir un *caso o controversia*, no poseemos jurisdicción para atender el mismo. En consecuencia, y como cuestión de umbral,

debemos determinar primeramente si tenemos jurisdicción para atender el recurso.

Como mencionamos en el trámite procesal, el 16 de octubre de 2023, OHM solicitó **enmendar su permiso de construcción** para colocar el anuncio de pantalla digital. El **permiso cuya enmienda se solicitó había sido expedido el 19 de octubre de 2020** y se le asignó el alfanumérico 2020-309096-PCOC-006891.[12] En la *descripción del proyecto* se indicó: *Instalación de Anuncio (Tipo Mesh) Adosado a Fachada de Edificio. Área de Ocupación 914.80 metros cuadrados. Área del Solar: 400.575.87 metros cuadrados.* Pendiente **la solicitud de enmienda** a dicho permiso, B Billboard, NC y B Billboard, BG solicitaron intervención. En este sentido y, de entrada, precisa advertir que en esta etapa, el proceso inicial de otorgación del permiso había culminado con su otorgación y por tanto, la solicitud para enmendarlo no puede ser considerada parte de este procedimiento primario ante la OGPe. Es decir, estamos ante un nuevo trámite distinto y diferente del primero que había finalizado.

Así las cosas, colegimos que resulta inaplicable al caso de autos, por ser diferenciable, la jurisprudencia donde nuestro alto foro resuelve que el proceso inicial de la concesión de permisos no es adjudicativo.[13] Reiteramos que la OGPe, en este caso, tenía ante su consideración una **solicitud de enmienda a un permiso previamente aprobado**. Por ende, el procedimiento ante su consideración **era uno adjudicativo** y era imperativo que la OGPe atendiera la solicitud de intervención presentada por B Billboard, NC y B Billboard, BG.

Ahora bien, el 3 de abril de 2024, la OGPe **notificó la aprobación a la enmienda** del Permiso de Construcción a OHM y a

---

[12] Véase, Expediente Administrativo.

[13] Véase, *Claro TV y Junta Regl. Tel. v. OneLink*, 179 DPR 177, 211 (2010); *Ranger American v. Loomis Fargo*, 171 DPR 670 (2007); y *San Antonio Maritime v. RR. Cement Co.*, 153 DPR 374 (2001).

B Billboard, NC.[14] Esta última determinó entonces presentar una reconsideración ante la División de Revisiones Administrativas (la División) de la OGPe. En este punto, podemos notar que la agencia no había autorizado al recurrente a participar del proceso. No obstante, la División decidió acoger el petitorio, sin resolver la solicitud de intervención, y señaló vista evidenciaria. Incluso, surge del dictamen recurrido que el Oficial Examinador tenía pendiente de adjudicación una solicitud de desestimación presentada por OHM en la cual adujo que B Billboard, NC no tenía legitimación para presentar una reconsideración al permiso otorgado. Además, previo a darle comienzo a la vista evidenciaria, las partes argumentaron ampliamente sobre la necesidad de resolver como cuestión de umbral dicha controversia. Sin embargo, la vista fue celebrada **sin una previa** determinación al respecto.

Por ende, el recurso de reconsideración fue atendido sin que la OGPe auscultara su jurisdicción y **sin asegurarse si B Billboard, NC cumplía con los criterios** establecidos en la LPAUG, la Ley núm. 161-2009 y el Reglamento Conjunto 2023 para ser considerado y autorizado como interventor.[15]

Así pues, es el dictamen recurrido, que la División declara *no ha lugar* al petitorio desestimatorio solicitado por OHM. Razonó incorrectamente que, a pesar de que no se notificó la aprobación de la intervención, sí se le notificó a la parte recurrente la aprobación del permiso. Como indicamos, del trámite procesal surge claramente que dicha solicitud no fue atendida, por ende, al respecto **no había que notificar**. Asimismo, incurrió en un error de derecho al inferir que, por el hecho de haberse notificado la concesión del permiso a

---

[14] Véase, Apéndice del Recurso a la pág. 113.
[15] Véase a manera persuasiva, la Sentencia dictada por el Tribunal Supremo en *IRR Gas Station Corp. v. OGPe*, 203 DPR 995 (2020).

B Billboard, NC ya era parte. No ignoremos el principio respecto a que un error de una agencia no crea derecho.[16]

Por otro lado, **sin la celebración de una vista** para examinar los criterios de intervención antes reseñados, la OGPe resolvió que de la solicitud surgían los fundamentos y el interés propietario de B Billboard, NC de los cuales se podía colegir que este sería afectado con la aprobación de la enmienda al permiso de construcción. Incluso, se consignó en el dictamen impugnado que "de no permite su participación y sostenerse el permiso de construcción objeto de revisión, sería adversamente afectada como competencia en el mercado, ya que se estarían emitiendo determinaciones inconsistentes y creando normas distintas en la evaluación de permisos de rótulos y anuncios." Sin duda, erró la OGPe al así concluir.

Reiteramos que el silencio de la agencia administrativa, ante una solicitud de intervención, no puede ser considerada como una aceptación de la misma. Asimismo, el hecho de haber sido notificado de la enmienda al permiso no subsana la obligación que tenía la agencia de notificar la concesión de dicha solicitud, o en su defecto adjudicarla previo a atender la impugnación de la enmienda. **Ninguna de las dos circunstancias ocurrió en el presente caso**. Debe señalarse, una vez más, que el interventor ha sido elevado a la calidad de parte una vez se le reconozca como tal interventor, según dispone la LPAUG, la Ley núm. 161-2009 y el Reglamento Conjunto 2023.

---

[16]Nuestro estado de derecho establece que los organismos administrativos retienen la potestad de corregir su error si dicho error constituye una violación a la ley. *Del Rey v. JACL*, 107 DPR 348, 355-356 (1978); *ELA v. Rivera*, 88 DPR 196, 199 (1963). Es decir, **un error administrativo no crea un estado de derecho que obligue a una agencia ni impida su corrección.** *Rivera Padilla v. OAT*, 189 DPR 315, 345 (2013); *González v. ELA*, 167 DPR 400, 413 (2006). Por ello, una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal para beneficiarse de esta. *Magriz v. Empresas Nativas, Inc.*, 143 DPR 63, 71 (1997); *véase, Del Rey v. JACL,* supra.

Por otro lado, si bien una parte puede ser considerada como "agraviada" e interesada en participar e intervenir en el proceso administrativo, puede carecer de legitimación activa para participar en la revisión judicial. La diferencia reside en la laxitud del procedimiento administrativo *vis a vis* el judicial. Como surge del derecho antes señalado, para que el litigante pueda presentar el recurso de revisión judicial tiene que satisfacer dos requisitos: (1) ser parte, y (2) estar "adversamente afectado" por la decisión administrativa.

En cuanto al primer criterio, ya hemos apuntalado que del trámite procesal surge que, previo a considerar la reconsideración instada por B-Billboard, NC, la OGPe no realizó ninguna determinación al respecto. Es decir, no fue aceptada o rechazada su intervención ni participaron del proceso para enmendar el permiso de construccion solicitado por OHM. Además, la División acogió la solicitud de reconsideración presentada por los peticionarios, sin evaluar ni constatar el interés legítimo de las partes.[17]

En relación al segundo criterio, la frase "adversamente afectada" significa que la parte recurrente tiene un interés sustancial en la controversia porque sufre o sufrirá una lesión o daño particular que es causado por la acción administrativa que se impugna mediante el recurso de revisión judicial.[18] Como indicamos, el daño tiene que ser **claro y específico,** no puede ser abstracto, hipotético o especulativo. Por tanto, para poder impugnar el dictamen aquí recurrido B Billboard, NC tenía que demostrar que sufre o sufriría un daño o lesión particular por la aprobación a la

---

[17] En este aspecto, los hechos procesales del presente caso son claramente distinguibles a los expuestos en *IRR Gas Station Corp. v. OGPe*, supra. Allí, la División de Reconsideración se **aseguró de que los peticionarios se convirtieran en "partes" formales en el procedimiento**, vía la figura del interventor, **antes** de disponer en sus méritos la solicitud de reconsideración. *Íd.,* a la pág. 1013.

[18] Destacamos que *Fund. Surfrider y otros v. ARPE*, supra, fue resuelto con posterioridad a *San Antonio Maritime v. P.R. Cement Co.*, supra. En *Fund. Surfrider y otros v. ARPE*, supra, se define por primera vez la frase "adversamente afectada".

enmienda solicitada por OHM y cómo dicha variación le afectaría adversamente.

El expediente administrativo, así como el expediente apelativo están huérfanos de dicha prueba. Las meras alegaciones de dedicarse al negocio de la publicidad exterior y ser dueño de ciertas vallas **que ubican cerca del anuncio propuesto,** no satisfacen el requisito de daño ni tienen relación causal alguna con una lesión como consecuencia de la actuación administrativa. Asimismo, y contrario a lo resuelto por el foro recurrido, no se puede concluir que, por el mero hecho de ser un *competidor en el mercado,* sea adversamente afectado por el permiso concedido. Aclaramos que *el interés económico de un competidor preocupado por una justa y legal competencia en el mercado* es un criterio para evaluar, por parte de la agencia, en su determinación para permitir la participación en el trámite administrativo.[19] No obstante, una alegación de esta naturaleza, sin elementos que demuestren que es o estará adversamente afectado por la determinación de la agencia, la ley **no le reconoce entonces**, la legitimación activa para presentar una revisión judicial.

Además, referente a lo anterior, es menester resaltar que del dictamen recurrido tampoco surge cómo B Billboard, NC podría aportar información, pericia, conocimientos especializados y asesoramiento técnico que, presumiblemente también los posee la OGPe, las que sin duda alguna <u>serían herramientas útiles para un análisis más certero del asunto</u> bajo estudio. El expediente administrativo, y el recurso ante este foro apelativo, igualmente **están huérfanos de dicho análisis**. Sobre este particular no ignoremos que, y a su vez reiteramos que, este caso se basa en una

---

[19] Véase, *San Antonio Maritime v. P.R. Cement Co.,* 153 DPR 374 (2001). Los conceptos "interés legítimo" y "legitimación activa" son distintos que exigen para su verificación criterios distintos. *Íd.,* a la pág. 293.

enmienda a un permiso ya otorgado para cambiar un anuncio *mesh* a uno de pantalla digital.

De igual manera, la escueta alegación de que es dueño de ciertas vallas que ubican cerca del anuncio propuesto no puede darle legitimidad para impugnar la decisión administrativa. En *Fund. Surfrider y otros v. ARPE*, supra, nuestro alto foro se expresó sobre la alegación de "vecino del proyecto" de la siguiente manera:

> La escueta alegación sobre su calidad de "vecino del proyecto" no puede darle legitimidad al copeticionario para impugnar la decisión administrativa. Permitir que una alegación **tan imprecisa y general pueda conferir legitimación activa**, abriría las puertas para que cualquier persona que participe en un procedimiento administrativo y se limite a alegar que es vecino del proyecto impugnado, reclame ser parte para fines de la revisión judicial sin establecer o demostrar que, en efecto, sus derechos se afectarían por la determinación final de la agencia." *Íd.*, a la pág. 589.

En resumen, B Billboard, NC no cumplió con su carga probatoria para acreditar que satisface los dos criterios analizados, ni en el recurso de revisión administrativa, ni en la moción expresando su oposición a la desestimación.[20] Por lo que, ante la insuficiencia de bases fácticas, no podemos determinar que el recurrente sería afectado por la determinación administrativa.

Por último, debemos expresar que el trabajo de mantener determinaciones consistentes es responsabilidad de la agencia, no de un interventor. Por lo que, este elemento sin más no puede ser aplicado *motu proprio* por el ente administrativo para concederle la intervención a un solicitante.

Conforme a todo lo antedicho, y más aún examinado el trámite administrativo, al palio de la legislación y la jurisprudencia antes consignada, surge sin lugar a dudas que B Billboard, NC no fue incluido como parte por la agencia recurrida, ni cumple con los requisitos para ser considerada una parte con legitimación activa para instar el presente recurso.

---

[20] La referida moción fue intitulada *Réplica a Moción de Desestimación.*

En consecuencia, procede declarar **ha lugar** a la *Moción de Desestimación* presentada por OHM y se desestima el recurso de revisión administrativa de epígrafe ante la falta de jurisdicción para atenderlo. Reiteramos, que los tribunales venimos llamados a resolver controversias genuinas y no cuestiones abstractas e hipotéticas que no tengan consecuencias entre las partes.

**IV.**

Por los fundamentos anteriormente expuestos, desestimamos el presente recurso por falta de jurisdicción.

La juez Lebrón Nieves disiente con opinión escrita.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| B BILLBOARD NC, LLC<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; OFICINA DE GERENCIA DE PERMISOS<br><br>Recurrida<br><br><br>OUT OF HOME MEDIA, LLC<br><br>Proponente-Recurrida | KLRA202400522 | *Revisión de Decisión Administrativa* procedente de la Oficina de Gerencia de Permisos<br><br>Caso núm.: 2023-511506-PCOC-040137<br><br><br>Sobre: Impugnación de Permisos de Construcción |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Jueza Romero García y Juez Rivera Torres

**VOTO DISIDENTE DE LA JUEZ LEBRÓN NIEVES**

En San Juan, Puerto Rico, a 13 de diciembre de 2024.

En el caso que nos ocupa, B Billboard NC, LLC (en adelante, la parte recurrente) le solicita a este foro intermedio que deje sin efecto la determinación de la División de Revisiones Administrativas (en adelante, DRA) de la Oficina de Gerencia de Permisos (en adelante, OGPE) emitida y notificada el 21 de agosto de 2024. Mediante el aludido dictamen, luego de celebrada la vista administrativa, el ente administrativo declaró No Ha Lugar la *Solicitud de Revisión Administrativa* interpuesta por la parte recurrente y sostuvo la enmienda al Permiso de Construcción número 2023-511506-PCOC-040137 otorgado a Out of Home Media, LLC. La parte recurrente solicita, además, que se ordene la paralización o demolición de la obra consiste en la instalación de una pantalla digital que sustituye un anuncio publicitario tipo *Mesh*

*Banner* 100' x 30' adosado a la pared del Centro Cardiovascular de Puerto Rico. Arguye la parte recurrente que, la obra en cuestión es contraria al ordenamiento y que el permiso otorgado infringe las normas imperantes de nuestro sistema de permisos.

Como bien surge de la *Sentencia* mayoritaria, en su recurso, la parte recurrente esgrime los siguientes señalamientos de error, a saber:

> Primer error: Erró la Honorable División de Revisiones Administrativas de la OGPE al confirmar el permiso expedido a la parte proponente a pesar de que: [...]
>
> Segundo error: Erró la Honorable División de Revisiones Administrativas de la OGPE como ente revisor al prescindir de incluir en su resolución final determinaciones adjudicativas en atención al resto de las inobservancias de la solicitud de permiso de construcción, adicionales al único asunto atendido sobre la enmienda de un permiso antiguo, ya usado y caducado.
>
> Tercer error: Erró la Honorable División de Revisiones Administrativas de la OGPE al no exponer la razón jurídica por la cual ignorar la letra de la sección 2.7.4.1 del Reglamento Conjunto de 2023, la cual solo permite la enmienda de un plano-y por tanto de un permiso de construcción-mientras se esté construyendo la obra y no años luego de finalizada una previa construcción, con formato distinto de anuncio no digital.
>
> Cuarto error: Erró la Honorable División de Revisiones Administrativas de la OGPE al ignorar los planteamientos de la solicitud de revisión de la recurrente, la prueba que obra en el expediente y la prueba desfilada en la vista administrativa.

En respuesta, la parte recurrida comparece ante este foro revisor mediante *Moción de Desestimación*. En esencia, nos plantea que, la solicitud de enmienda al aludido permiso fue sometida por OHM y aprobada por la OGPE únicamente contempla un cambio en tecnología sin que se altere el tamaño, altura y ubicación del anuncio existe. Añade que, el anuncio publicitario tipo *Mesh* Banner contaba con un Permiso de Construcción Consolidado, aprobado desde el 20 de octubre de 2020, y con un Permiso para la Instalación de Rótulos y Anuncios (Permiso para la Instalación) que

ha sido renovado anualmente, según lo requiere la Ley 161-2009, Ley para la Reforma de Permisos, 23 LPRA se. 9011, *et seq*.

La mayoría de este Panel opta por desestimar el recurso por falta de jurisdicción para atender el mismo, al razonar que "el recurso de reconsideración fue atendido sin que la OGPe auscultara su jurisdicción y **sin asegurarse si B Billboard, NC cumplía con los criterios** establecidos en la LPAUG, la Ley núm. 161-2009 y el Reglamento Conjunto 2023 para ser considerado y autorizado como interventor."

Al respecto, es preciso señalar que, de la determinación recurrida se desprende con meridiana claridad lo siguiente y citamos:

> Surge de lo ventilado en la vista de revisión y del escrito post vista de la parte Recurrente, que la OGPE no notificó la aprobación de intervención del caso que nos ocupa, más sí le notificó a la parte Recurrente la aprobación del permiso el pasado 3 de abril de 2024.

> Analizada la Solicitud de Desestimación por Falta de Legitimación presentada por la parte Proponente, se declara la misma No Ha Lugar. Concluimos que, según alegado por la parte Recurrente, de no permitirse su participación y sostenerse el permiso de construcción objeto de revisión, sería adversamente afectada como competencia en el mercado, ya que se estarían emitiendo determinaciones inconsistentes y creando normas distintas en la evaluación de permisos de rótulos y anuncios.

Si bien es cierto que la OGPE no dispuso sobre la moción de intervención de la parte Recurrente, sí se atendió tal solicitud posteriormente en la *Resolución de Revisión Administrativa*, cuya revisión nos atiene. Es meritorio destacar que, dicha determinación que permitió la intervención de la parte recurrente, no fue objeto de revisión ante este foro apelativo por la parte recurrida.

Ni la parte recurrida ni la mayoría de este Panel, exponen y mucho menos, fundamentan las razones por las cuales la determinación de permitir la intervención en la vista administrativa es improcedente en derecho. A fin de cuentas, lo que hizo la Jueza

Administrativa fue salvaguardar el debido proceso de ley a la parte Recurrente.

Por consiguiente, no habiendo la parte recurrida impugnado oportuna y debidamente, la determinación del ente administrativo sobre la intervención de la parte recurrente, no puede plantearlo por primera vez en esta etapa meramente como fundamento para solicitar la desestimación del recurso.

Dicho lo anterior, esta Juez, confirmaría la determinación recurrida, por entender que le asiste la razón a la parte recurrida respecto a que la enmienda al permiso en cuestión sometida por OHM y aprobada por la OGPE únicamente contempla un cambio en tecnología sin que se altere el tamaño, altura y ubicación del anuncio existe. Habida cuenta que el anuncio publicitario tipo *Mesh* Banner contaba con un Permiso de Construcción Consolidado, aprobado desde el 20 de octubre de 2020, y con un Permiso para la Instalación que ha sido renovado anualmente, no procede la revocación pretendida por la parte recurrente.

**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones