Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido<br><br>v.<br><br>CHRISTIAN BUTLER COLÓN<br><br>Recurrente | KLRA202500041 | REVISIÓN ADMINISTRATIVA procedente de la Junta de Libertad Bajo Palabra<br><br>Caso núm.: 150123 Confinado núm. B306-17517<br><br>Sobre: No Jurisdicción (Ley núm. 85-2024) |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

Comparece ante este tribunal apelativo, el Sr. Christian Butler Colón (el señor Butler Colón o recurrente) mediante el *Recurso de Revisión Judicial* de epígrafe y nos solicita que revoquemos la *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLPB o la recurrida) el 12 de noviembre de 2024, notificada el 18 de diciembre siguiente.[1] Mediante este dictamen, la JLBP declaró no tener jurisdicción para atender la solicitud del recurrente.

Por los fundamentos que expondremos más adelante, se confirma la *Resolución* recurrida.

**I.**

Surge del recurso presentado que el señor Butler Colón se encuentra en el Instituto Educativo de Bayamón 308, luego de haber sido sentenciado a catorce (14) años de cárcel por los delitos de:

---

[1] Destacamos que el dictamen recurrido se consignó que las partes fueron notificadas el 16 de diciembre de 2024. No obstante, el recurrente acompañó copia de la notificación enviada por la Junta el 18 de diciembre al correo electrónico de su representante legal. Véase, Apéndice del Recurso, a la pág. 4.

Tentativa de Robo, Tentativa de Secuestro e infracción al Artículo 5.06 de la Ley de Armas.

El 2 de julio de 2024, el recurrente fue referido a la JLBP para ser evaluado. El 12 de noviembre del mismo año, dicha entidad emitió el dictamen aquí recurrido en el cual concluyó que, conforme a lo dispuesto en la Sección 3 de la Ley núm. 85-2024, no tiene jurisdicción para atender el referido. Además, señaló que "[s]egún surge de la hoja de liquidación de sentencia, el peticionario no ha cumplido la totalidad de la pena por tentativa de secuestro. … Tan pronto el peticionario culmine su sentencia de diez (10) años el 10 de agosto de 2027, podrá ser evaluado por los dos (2) casos de Ley de Armas. El peticionario culminará la sentencia por Ley de Armas tentativamente el 6 de agosto de 2030."[2]

Inconforme, el 17 de enero de 2024, el recurrente compareció ante este foro intermedio y señaló al foro administrativo la comisión de los siguientes errores:

> ERRÓ LA JLBP AL APLICAR RETROACTIVAMENTE DISPOSICIONES DE LEY QUE SON CONTRARIAS AL PRINCIPIO CONSTITUCIONAL QUE PROHÍBE LA APLICACIÓN DE LEYES EX POST FACTO Y OTROS DERECHOS CONSTITUCIONALES SUSTANCIALES.
>
> ERRÓ LA JLBP AL DENEGAR LA CONCESIÓN DEL PRIVILEGIO SIN LLEVAR A CABO EL DEBIDO PROCESO DE LEY AL NO APLICAR LA LEY VIGENTE AL TIEMPO DE COMETERSE EL DELITO Y SER SENTENCIADO, POR SER DISTINTA A LA QUE EXISTÍA AL MOMENTO DE PROCESAR Y SENTENCIAR AL ACUSADO Y APLICAR PARA SU DENEGATORIA DE PRIVILEGIOS LA LEY MÁS SEVERA EN OCASIÓN DE APLICAR LA LEY MÁS BENIGNA.

El 22 de enero de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término de treinta (30) días para expresarse.[3] El 18 de febrero siguiente, compareció la Oficina del Procurador General mediante un *Escrito en Cumplimiento de*

---

[2] Véase, Apéndice del Recurso, a la pág. 1.
[3] El 27 de enero de 2025, el recurrente presentó una *Moción Informativa en Cumplimiento de la Regla 15 del Reglamento del Tribunal de Apelaciones* de la que nos damos por enterados.

*Resolución.* Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Revisión judicial de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Asoc. Fcias. v. Caribe Specialty et al. II.*, 179 DPR 923, 940 (2010).[4]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia erró en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, a la pág. 822 (2012). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II*, *supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que

---

[4] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias,* 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota,* supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio

razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006), citando a *Otero v. Toyota*, supra.

**La Junta de Libertad Bajo Palabra**

Mediante la Ley núm. 118 de 22 de Julio de 1974, conocida como la *Ley de la Junta de Libertad Bajo Palabra*, (Ley núm. 118), 4 LPRA sec. 1501 *et seq.*, según enmendada, se creó la JLBP. Esta está adscrita al Departamento de Corrección y Rehabilitación, según establece su Artículo 1, 4 LPRA sec. 1501. Dicha entidad, posee autoridad para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico". Artículo 3 de la Ley núm. 118, 4 LPRA sec. 1503. "La libertad bajo palabra será decretada para el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". *Íd.* De esta forma, se permite que una persona convicta y sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, "sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad". *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).

Ahora bien, "el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio cuya concesión y administración recae en el tribunal o en la Junta". *Quiles v. Del Valle*, 167 DPR 458, 475 (2006). El **mencionado privilegio** será concedido siempre y cuando el convicto "muestre un alto grado de

rehabilitación y que no represente un riesgo a la sociedad". Artículo 3(c) de la Ley núm. 118, *supra,* 4 LPRA sec. 1503c.[5] Por consiguiente, la Junta posee discreción para decretar la libertad bajo palabra de cualquier persona recluida en las instituciones penales de Puerto Rico, **siempre que no se trate de los delitos excluidos de dicho beneficio**, y que la persona haya cumplido el término mínimo de la sentencia dispuesto por dicha ley. Artículo 3 de la núm. 118, *supra*; *Toro Ruiz v. J.L.B.P. y otros*, 134 DPR 161, a la pág. 166 (1993). Así, por tratarse de un privilegio, la Junta tendrá facultad para concederlo, tomando en consideración ciertos factores que establece dicha ley en su Artículo 3(d), *supra*, 4 LPRA sec. 1503d.

Asimismo, y en lo aquí pertinente, mediante la Ley núm. 85-2024 se enmendó:

> [...] el Artículo 308 de la Ley 146-2012, según enmendada, conocida como "Código Penal de Puerto Rico" y el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como "Junta de Libertad Bajo Palabra", a los fines de reafirmar que las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, **secuestro**, **secuestro agravado** y pornografía infantil, **incluyendo sus tentativas**, no podrán beneficiarse de privilegio de libertad bajo palabra y otras consideraciones, **indistintamente de la fecha de la comisión del acto delictivo ni el código penal** o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012. Además, esta iniciativa aclara que **la Ley 85-2022 no aplicará retroactivamente** a las personas convictas por estas actuaciones delictivas y dispone que el referido estatuto no surtirá efecto en el cálculo de su sentencia. [Énfasis nuestro]. *Exposición de Motivos* de la Ley núm. 85-2024.

En consecuencia, el Artículo 3 de la Ley núm. 118 intitulado *Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra,* lee como sigue:

> La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán

---

[5] Énfasis nuestro.

beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

La Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.

La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

Los participantes que ya estén disfrutando del privilegio de libertad bajo palabra por la comisión de los delitos dispuestos en esta Ley y que sean revocados con posterioridad a su aprobación, no se les concederá nuevamente este privilegio.

**Las personas que al momento de la aprobación de esta Ley estén referidas bajo la consideración de la Junta de Libertad Bajo Palabra sin que haya una determinación final, no cualificarán para este privilegio, indistintamente de la etapa procesal en que se encuentre la referida solicitud**. Sección 3 de la Ley núm. 85-2024 [Énfasis nuestro]

Por otra parte, la Sección 4 de la Ley núm. 85-2024 dispone que la misma "entrará en vigor inmediatamente después de su aprobación y aplicará de **manera retroactiva**, independientemente del Código Penal o Ley Especial vigente al momento de los hechos delictivos." (Énfasis nuestro)

**Leyes *ex post facto***

El Artículo II, Sección 12 de nuestra Constitución contiene una prohibición expresa sobre la aprobación de leyes *ex post facto*. Const. PR, LPRA, Tomo 1; *González v. ELA*, supra, a la pág. 408. El más alto foro ha sido enfático en la existencia de cuatro (4) tipos de estatutos que consideran *ex post facto*, estos son las leyes que: "(1) criminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley

al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable." *Íd.*; *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 990 (2019).[6]

Asimismo, esta cláusula constitucional garantiza que los estatutos provean al ciudadano una notificación adecuada de aquella conducta prohibida y sobre las consecuencias penales que conlleva realizar tal conducta. *González v. ELA*, supra, a la pág. 408. De igual manera, tiene como propósito "[p]rohibir la aplicación retroactiva de una ley que agrave para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir con una sentencia o su extensión". *Pueblo v. Ferrer Maldonado*, supra, a la pág. 991, citando a E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, págs. 545–549. Por ende, la protección constitucional contra leyes *ex post facto* únicamente se activa cuando se pretende aplicar una ley penal de manera retroactiva. *Pueblo v. Ferrer Maldonado*, supra, a la pág. 991; *González v. ELA*, supra, a las págs. 409-410. Es por lo que, como regla general, la Asamblea Legislativa no se encuentra impedida de aplicar retroactivamente leyes de carácter civil. *Pueblo v. Ferrer Maldonado*, supra, a la pág. 991; *González v. ELA*, supra, a la pág. 410.

**Principio de favorabilidad**

Como es sabido, en el ámbito penal opera el postulado básico de que la ley que aplica a unos hechos delictivos es aquella vigente al momento de cometerse el delito. *Pueblo v. Rexach Benítez,* 130 DPR 273, 301 (1992). El principio de favorabilidad se activa <u>cuando una ley posterior es más beneficiosa</u> para el acusado o confinado,

---

[6] Véase, además, *Pueblo en interés menor FRF,* 133 DPR 172 (1993).

salvo que exista una cláusula de reserva que impida su extensión retroactiva. *Pueblo v. González,* 165 DPR 675, 685 (2005).

Este principio de favorabilidad establece en términos generales que la ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. Sin embargo, el principio de favorabilidad no tiene rango constitucional, quedando la aplicación retroactiva de las leyes penales que favorezcan al acusado dentro de la prerrogativa total del legislador. *Pueblo v. González,* supra, a la pág. 686. Por ende, la única limitación a esta disposición es que la ley posterior más favorable contenga una cláusula de reserva. Nevares Muñiz, *Código Penal de Puerto Rico Comentado por Dora Nevares-Muñiz* (2012), en la pág. 10.

**Cláusula de Reserva**

Mediante la incorporación de las cláusulas de reserva en leyes especiales se ha advertido la intención del legislador de imponer limitaciones al principio de favorabilidad. *Pueblo v. González,* supra, a las págs. 698-699 (2005); D. Nevares-Muñiz, *Derecho Penal Puertorriqueño,* 7ma ed. Rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 102. De este modo, reconocimos también la validez de lo que pueda establecer una cláusula de reserva contenida en una ley penal especial en cuanto a su aplicación retroactiva. [...] *Por consiguiente, es razonable concluir que en nuestra jurisdicción la aprobación de cláusulas de reserva opera como una limitación al principio de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador. Pueblo v. González,* supra, a las págs. 701-702. [Itálico en el original].

**El error administrativo**

Nuestro estado de derecho establece que los organismos administrativos retienen la potestad de corregir su error si dicho

error constituye una violación a la ley. *Del Rey v. JACL,* 107 DPR 348, 355-356 (1978); *ELA v. Rivera,* 88 DPR 196, 199 (1963). Es decir, **un error administrativo no crea un estado de derecho que obligue a una agencia ni impida su corrección.** *Rivera Padilla et al. v. OAT,* 189 DPR 315, 345 (2013); *González v. ELA*, 167 DPR 400, 413 (2006). Por ello, una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal para beneficiarse de esta. *Magriz v. Empresas Nativas, Inc.*, 143 DPR 63, 71 (1997); *véase, Del Rey v. JACL,* supra.

### III.

En esencia, el recurrente señaló que la JLBP erró al aplicar la Ley núm. 85-2024 retroactivamente en violación a la cláusula constitucional que prohíbe la aprobación de leyes *ex post facto* y, por ende, ignorar la ley vigente al momento de cometerse los delitos. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

Según indicamos, para determinar la aplicabilidad de la prohibición constitucional de leyes *ex post facto* se requiere analizar si el estatuto: (1) si criminaliza y castiga un acto que al ser realizado <u>no era delito</u>; (2) si <u>agrava un delito o lo hace mayor</u> de lo que era al momento de ser cometido; (3) si <u>altera el castigo imponiendo una pena mayor</u> que la fijada para el delito al momento de ser cometido, y (4) si altera las reglas de evidencia <u>exigiendo menos prueba</u> que la requerida por ley al momento de la comisión del delito para castigar al acusado o <u>reduciendo el *quantum* de evidencia</u> necesario para encontrarlo culpable.

Respecto a lo anterior, de entrada, es preciso advertir que la Ley núm. 85-2024 **no es una ley penal,** ni es punitiva y menos aún, penaliza una nueva conducta criminal. Consecuentemente, este estatuto no cualifica bajo ninguno de los cuatro criterios de análisis que se consideran contrarios a nuestra cláusula constitucional *ex*

*post facto*. Por otra parte, el beneficio de la libertad bajo palabra **no es un derecho reclamable**, **sino un privilegio** cuya concesión y administración recae en el tribunal o en la JLBP que está adscrita al Departamento de Corrección y Rehabilitación, según establece el Artículo 1, 4 LPRA sec. 1501, de la Ley núm. 118, *supra*.

De otro lado, respecto a la Ley núm. 85-2024, en su *Exposición de Motivos*, la Asamblea Legislativa señaló que "Es imperativo, poder atemperar esta Ley a los tiempos que vivimos, donde los casos de esta índole cada día son más notorios y a su vez, atroces." Además, como citáramos dicha legislación claramente establece que "... las personas convictas por los delitos de agresión sexual en todas sus modalidades, incluyendo la tentativa, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012."

Por otro lado, la Sección 3 de la Ley núm. 85-2024 diáfanamente señala que "[l]as personas que al momento de la aprobación de esta Ley estén referidas bajo la consideración de la Junta de Libertad Bajo Palabra sin que haya una determinación final, no cualificarán para este privilegio, indistintamente de la etapa procesal en que se encuentre la referida solicitud."

Como es sabido, es un principio reiterado que cuando la ley es clara y libre de ambigüedad, se respetará su letra. En virtud de dicho mandato, cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. *Romero Barceló v. E.L.A.*, 169 DPR 460, a las págs. 476-477 (2006); *Ortiz v. Mun. de San Juan*, 167 DPR 609, 617 (2006). Por tanto, es deber darle efecto a la intención expresada mediante la letra de la ley. *Íd.*

En conclusión, la enmienda realizada a la ley de la JLBP no criminaliza un delito, ni impone una pena mayor. Por tanto, su aplicación no violenta la cláusula constitucional aquí cuestionada. Apuntalamos que la ley en controversia es un **un privilegio**, **no un derecho,** otorgado por la propia Asamblea Legislativa, por ende, **está dentro de sus poderes determinar los parámetros y condiciones para su aplicabilidad y concesión**.

Por tanto, el raciocinio de la JLBP al declararse sin jurisdicción, en este momento, para atender el petitorio del señor Butler Colón encuentra justificación en la Ley núm. 85-2024.

De igual manera, y como señalamos, el principio de favorabilidad se activa cuando una ley posterior es más beneficiosa para el acusado o confinado, salvo que exista una cláusula de reserva que impida su extensión retroactiva. En este caso, y como bien argumentó el Procurador General, el señor Butler Colón no tiene derecho a la aplicación del nuevo cómputo del mínimo para elegibilidad al privilegio de libertad bajo palabra dispuesto en la Ley núm. 85-2022[7]. Esto, debido a que expresamente en la Ley núm. 85-2024 se estableció **una Cláusula de Reserva,** la cual regula el campo de acción de la Junta de Libertad Bajo Palabra. Según, preceptúa el estatuto, **la Ley núm. 85-2022 no aplicará retroactivamente** a las personas convictas por las actuaciones delictivas especificadas (incluyendo el secuestro) y a su vez, dispone que el anterior estatuto no surtirá efecto en el cálculo de su sentencia. Sección 3 de la Ley núm. 85-2024.[8] Por tanto, y en este

---

[7] La Ley núm. 85-2022 enmendó el Artículo 308 del Código Penal de Puerto Rico, entre otras cosas, con el fin de establecer los términos para cualificar para la consideración de la Junta de Libertad Bajo Palabra y los actos delictivos excluidos de cualificación ante el ente evaluador.

[8] La Ley núm. 85-2024, en lo pertinente, expresa lo siguiente:

[…]

Sección 3 – Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra. La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, **secuestro**, secuestro

particular, cualquier cómputo realizado por el Departamento de Corrección y Rehabilitación, acorde con la Ley núm. 85-2022, en la *Hoja de Control sobre Liquidación de Sentencias* resulta improcedente en virtud de lo expresamente mandatado en la Ley núm. 85-2024 ni crea un derecho al recurrente. La Ley núm. 85-2024 dispone que el referido estatuto no surtirá efecto en el cálculo de la sentencia. Por lo que, estamos ante un error administrativo que puede ser corregido por la agencia máxime cuando la actuación contraviene la Ley núm. 85-2024. Recalcamos, que una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal para beneficiarse de esta.

En virtud de lo antedicho, reiteramos que el principio de favorabilidad no tiene rango constitucional, quedando la aplicación retroactiva de las leyes penales que favorezcan al acusado dentro de la prerrogativa total del legislador. Al respecto precisa señalar que, en la *Exposición de Motivos* de la Ley núm. 85-2024, la Asamblea Legislativa diáfanamente apuntaló que, aunque se reconoce el derecho de rehabilitación, debe prevalecer la seguridad de las víctimas y que no se lacere su salud mental y la paz que le fueron arrebatadas.

Por último, no podemos obviar que, como expusimos, la Ley núm. 85-2024, en la Sección 4, indica que la misma "entrará en vigor inmediatamente después de su aprobación y aplicará de **manera retroactiva**, independientemente del Código Penal o Ley Especial vigente al momento de los hechos delictivos."

---

agravado y pornografía infantil, **incluyendo sus tentativas**, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del delito ni el código penal o ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012. [Énfasis nuestro].
La Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.

[...]

Así las cosas, y a base de la totalidad del expediente administrativo y el derecho aplicable, la determinación recurrida no fue una arbitraria, irrazonable ni ilegal. Por el contrario, la misma se ampara en el mandato expreso de la Ley núm. 85-2024 y los principios jurídicos antes explicados.

En consecuencia, los errores señalados por el recurrente no se cometieron.

**IV.**

Por los fundamentos antes expuestos, se confirma el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones
